We'll hear from you. Good morning, Your Honors, and may it please the Court. I'm Michael Sawyers, and along with co-counsel Lauren Steinhauser, we represent the appellant, Sheila Anderson. It is undisputed that Sheila Anderson has several physical and mental severe impairments, all of which her treating providers identified and attempted to treat. Those findings and the corresponding limitations imposed by her treaters are substantial, objective medical evidence, including standard diagnostic tests, laboratory analyses. Despite those truths, the ALJ improperly discounted Ms. Anderson's physician's opinions or diminished the weight those opinions rightly deserved. This Court's precedents and the Commissioner's own regulations are clear in terms of how ALJs are required to analyze treating physicians' opinions. In Leckinby and Chantos, this Court held that treating physicians are entitled to controlling weight if the opinions are consistent with objective medical evidence. Well, Dr. Clevenger's aren't, right? He cites findings that aren't anywhere in the record. Do I understand? With respect, Your Honor, Dr. Clevenger cites, filled out a three-page RFC assessment, and in that assessment, Dr. Clevenger identified several impairments, including the musculoskeletal pain, the saccolitis, and based on that, Dr. Clevenger identified nine limitations. But what the ALJ and the District Court forget is that Dr. Clevenger had the benefit of being a treating physician. Dr. Clevenger had Ms. Anderson's entire treatment record in mind. And so to say that an RFC assessment should be rejected because it's not as detailed as the voluminous medical record doesn't seem to square with this Court's standard in saying controlling weight is given. And again, Dr. Clevenger identified both physical and psychological limitations and impairments. And so the ALJ forgets and the Commissioner argues that because the RFC assessment doesn't go through the chapter and verse of the history that Dr. Clevenger had with Ms. Anderson, that it should be rejected. And so it's not the typical conclusory statement that the Court might consider rejecting. But setting that aside, Your Honor, even if controlling weight's not the right amount of weight that Dr. Clevenger should have, we know from Salmon's v. Astru that if treaters don't get controlling weight, they're entitled to substantial weight. And so there's no situation in which it's acceptable to simply reject a treating physician's opinion if there's evidence to support it. And we know that, Your Honor, because in O'Donnell v. Barnhart and Combs v. Berryhill, this Court held that if there are questions about the weight, meaning, or value of a treater's opinion, the ALJ is obligated to develop the record. In this case, the ALJ credited physicians who saw Ms. Anderson one time, some of which were before the alleged date of onset, the disability onset, and decided that was sufficient, substantial evidence in the record when that's simply not the case. And so we talked briefly about Dr. Clevenger, but Dr. Fazelli, Ms. Anderson's rheumatologist, treated her for nine months, ordered exams, including blood tests and MRIs, and concluded Ms. Anderson has ankylosing spondylitis. Dr. Fazelli filled out a medical source statement, again, based on the nine months of treatment, and said that in Dr. Fazelli's opinion, Ms. Anderson was unable to engage in substantial engagement. Is there a legal issue? Because he says six to 12 months expected improvement and possibly limited to 12 months, and disability requires 12 months, right? So does it fail kind of on its face? Respectfully, Your Honor, no. Because at record 1559, Dr. Fazelli said, certified that Ms. Anderson had medically determinable physical or mental impairment that can be expected to result in death, or has lasted for 60 months, and can be, or can be expected to last at least 60 months. So that's precisely... But he also says we expect improvement in six to 12 months? So, Your Honor, that, Dr. Fazelli makes both of those statements. Right. So when we have a crucial issue here, a treating physician that's making what appear to be two a crucial issue from a treating physician, I need to develop the record and clarify. This isn't some offhand comment. These are, this person could qualify under our regulations for disability or could not. And so by failing to develop the record in that way, the ALJ erred. And I know that claimants make this develop the record argument all the time, but I think it's two statements that are so categorically incompatible and maybe in some cases dispositive. So that's, again, Fazelli, and that's Clevenger, who we discussed very briefly. When it comes to Nurse McNaughton, Nurse McNaughton also was part of a treatment team, and so her conclusions and her medical opinions are also entitled to controlling weight. Nurse McNaughton discussed lumbago, cervicalgia, and degeneration of discs in Ms. Anderson's spine. Those are objective, that degeneration of intravertebral discs, excuse me, is an objective medical finding, and it is reasonable, and it is substantial evidence to say that those impairments and those conditions, especially in light of the worsening course that Ms. Anderson's impairments can take, would contribute to and create impairments that were not included in the ALJ's calculation of the RFC. And so the court, you know, that's the first, the first issue is failing to give full credit to the treating physicians. That manifested in an improper RFC hypothetical to the vocational expert, and if this court well knows, if the hypothetical given to the vocational expert is improper or incomplete, that requires a reversal. Now, there are two aspects of the ALJ's hypothetical to the vocational expert that are particularly important. One was the absence requirement that Ms. Anderson may miss four or more days of work, and two was the amount that Ms. Anderson was able to walk. The ALJ didn't make an alternative, it posed an alternative hypothetical that made its way into the ALJ's order, but the ALJ did ask the vocational expert, what if someone misses four days, and what if someone can't, excuse me, it wasn't walking, it was lifting, what if someone can't lift, consistent with the way that Dr. Clevenger described Ms. Anderson's limitations, and the ALJ said, under those circumstances, there are no jobs in the national economy that Ms. Anderson would be able to complete, and so I'm into my rebuttal time, I'm happy to answer questions or save them for rebuttal. Very well, you may reserve. Mr. Moss, we'll hear from you. May I please the court? Good morning, my name is Michael Moss, and I represent Social Security Commissioner Andrew Saul. I'd like to pick up in response to opposing counsel's argument. He initially pointed out to the court that this case involved several impairments and limitations. That's true. The commissioner agrees. The ALJ found that there were several severe impairments, each that significantly limited Anderson's ability to work. Degenerative disc disease of the cervical and lumbar spine, possible ankylosing spondylitis, a form of arthritic spinal inflammation, chronic pain syndrome or somatic symptoms disorder, anxiety and depression, but several severe impairments. The ALJ accounted for those impairments by limiting Anderson to sedentary work, the lowest level of exertional work, added an additional limitation to her being required to be able to change positions from sitting to standing every 30 minutes, and also mentally limited her to routine and repetitive simple work. Opposing counsel pointed out, after Judge Benton raised it, to Dr. Klovenger's treating physician opinion. The commissioner does not dispute that that opinion, if given controlling weight, would preclude any type of substantial gainful activity. However, that opinion was not entitled to any significant weight because of all the other evidence. The treating physician rule requires that to be entitled to controlling weight, an opinion has to be both supported by the evidence and not inconsistent with the other evidence. Now, opposing counsel misstated that Nurse McNaughton was a treating source and that her opinion was entitled to weight. As a nurse, Ms. McNaughton did not qualify as an acceptable medical source, more recently the commissioner has revised the regulations, but the regulations in place for this case clearly provide that Nurse McNaughton was not an acceptable medical source, her opinion was not a medical opinion, and she could not therefore qualify even as a treating source, but her opinion was worthy of consideration in identifying what the specific functional limitations were. But, those are the two opinions that are on one side, Anderson's side. There's three opinions that arguably at first appear to support her claim, but don't. One of them, Dr. Fuseli's opinion, as the court acknowledged, Dr. Fuseli estimated that the six to 12 months, that clearly does not meet the act's durational requirement of a continuous period of at least 12 months. I haven't looked at 1558 to 59, but I heard counsel say in 59 there's a qualification of what's on 58 and 59. It's exactly where I was going to go, the Supreme Court and Barnhart v. Walton upheld the commissioner's interpretation of the act's statutory requirement, or durational requirement, that it requires that not only the underlying impairment, but the limitations preventing substantial gainful activity have to meet that durational requirement. So, Dr. Clevenger's acknowledgment of how long she had had the underlining condition doesn't change the fact that the limitations that were assessed were assessed for a period of six to 12 months. My question is more pointed. I think counsel was trying to tell me that on 1559 he has a different statement about how long. You see what I'm saying? Yes, your honor. I think they're on 1558 and maybe the page over to 59. Do you know the record? If you don't, just we'll look at it. Your honor, 1600 pages of medical records. I'm familiar with it, but I don't want to I don't want to speak to something that may be wrong. What I'll say is any inconsistency in those opinions would not weigh in their favor. That said, there's Dr. Clevenger, Dr. Fuseli, we could say maybe that could go both either way, but then you've also got Dr. Zeller, who also said that any inability to work would be short-term, and you've got Dr. Wingler, whose opinion of disability was Well, the commissioner found at step four that she could not perform her previous work, so Dr. Wingler's opinion is consistent with the commissioner's decision. I would argue Dr. Fuseli's opinion, at the very least, is not inconsistent with it, and I would argue that Dr. Zeller's opinion is consistent with it, and that really leaves Dr. Clevenger and Nurse McNaughton, but on the other side of the ledger you have Dr. Gose, and admittedly Dr. Gose provided the opinion 13 months before the alleged onset date, but this case arose from three separate injuries, and the three separate injuries began in January 2012, and a second one in October 2012, and the third and final one July 2013, so that's why there were these previous opinions, because Anderson was already seeking workers' compensation, and it's avoided the workers' compensation claim issue. This is a rare case in which a social security case involves a workers' compensation case that was denied. It was flat-out denied. The workers' compensation court found that she had no permanent limitations that would prevent her from performing her past relevant work that the commissioner found she couldn't perform, and in any workers' compensation claim, that's why we have evidence really that goes to both sides. It's like a lot of litigation where you have experts and evidence on this side and this side, but the ALJ's job was to resolve that conflict. That's what the ALJ did very well in this case. Dr. Gose, quote, no restrictions or limitations, perfectly normal examination. Dr. Janji, no evidence of injury restrictions, no evidence of injury restrictions. One of those opinions was before the alleged onset date. The other was after the alleged onset date. Nurse Drew denied a handicapped parking permit because Anderson acknowledged that she could walk for an hour. Dr. Yeager, also in the moment period, found that Anderson was not disabled and could do light duty and eventually normal work. Her physical therapist, Tanya Snyder, released her from physical therapy and said her exam was completely normal. Dr. Logel, a psychologist, he found that she over-reported her symptoms and found that she could return to work initially at two hours a day but then move in up to full time. Then we have four state agency experts, all of whom reviewed the record. All of them found that she was less restricted than the ALJ found. Dr. Alsdorf and Dr. Nelson, the state agency psychological consultants, found that she could do routine and repetitive work, but where the ALJ limited her to simple work, they found she could also do three to four step work. And Dr. Fingar and Dr. Osman, the state agency medical consultants, they both found that she could do medium work, not even the restriction to light work. So a lot of the, there were more opinions that the ALJ discounted for not being restrictive enough. And what that demonstrates is that when I've just referenced, I believe it's 14 or 15 separate opinions, they're all over the board and the ALJ is the referee who has to reconcile that. That's exactly what the ALJ did. It was Anderson's burden entirely to prove her limitations. And the ALJ did his job of resolving the conflict, assessing the RFC, and for the court to overrule the ALJ's finding, the court would have to find that no reasonable person could find that there was sufficient evidence to support the ALJ's finding. And as the Supreme Court recently reminded us in Beastick earlier this year, that is not a high burden. In fact, the Supreme Court, the way they worded it is that the threshold for evidentiary sufficiency with a substantial evidence standard is, quote, not high. You point out earlier about the three separate, and this case is interesting, especially from that standpoint. How closely or how separated in time were the different injuries? Well, Your Honor, the first one was in January 2012, where she said she tripped on a rope at work. Nine months later, October 2012, she said she injured herself lifting a couch. And I believe that was at work, where she was setting up photo shoots. And then the third one was carrying a tuxedo in her right hand in July 2013. So our understanding is the culmination of all this, she filed the workers' compensation after the first one. And so that's why it was that series of different injuries over time. But I will point out that after the first injury is when she flew to Thailand. So she was already filing a workers' compensation claim for sitting limitations, yet she flew to Thailand and went swimming. And I know I don't have time to get into it, but in weighing her subjective complaints, she was going cliff jumping into rivers, swimming, dancing, hiking, biking, walking up to a mile, doing yoga. All of that is in our briefs. And so therefore, the commissioner respectfully submits that the evidence supports the commissioner's decision and asks that you affirm. Are you from the Dallas office? Yes, Your Honor, I am. I see. Thank you for your argument. Thank you. Mr. Sawyers, we'll hear from you in rebuttal. Thank you, Your Honors. A lot to unpack there. A lot I'd like to respond to that I'll try to focus my comments. First, of the providers that the commissioner relies on, 12 of the 18 saw Ms. Anderson once. Of those, and nine of those 12 were consulting physicians referred by the state in either her workers' compensation proceedings or disability proceedings. Some of them never saw Ms. Anderson, couldn't pick her out of a lineup. And so when we're talking about giving credibility and weight to folks who are reading a cold record one time, that strikes me as less relevant and less compelling than, in this case, the physicians who had the benefit of the arc. The entire longitudinal view that the commissioner says should be important. The physicians who are able to see from that first incident all the way through and see the records and see the development and, unfortunately, the deterioration. There's a lot that the commissioner talks about with this workers' comp claim. First, it was filed as he—I think he corrected the record to note that it was filed after the first claimed injury. There were three injuries, ultimately, and that workers' comp decision was based on just the first. But setting that aside, the impairments that the ALJ identified and that the commissioner concedes are applicable, including, for example, ankylosing spondylitis confirmed by blood and MRI tests, is a disease and a condition that worsens over time. So after tripping over a rope and going on a trip to Thailand, that is so early and so long before the disease materialized. And so it's just important to note that—and we tried very hard to, throughout our briefing, make clear the physicians who were one-time consulting physicians. At the end of the day, this court's direction is clear. If there's objective medical evidence that supports a controlling physician's opinion, it should be given controlling weight as long as it's not inconsistent. And if it is inconsistent, it should still be given substantial weight. And we go through and, again, in detail discuss the complete disregard that the ALJ gave to some of Ms. Anderson's treating physicians, which is just inconsistent with this court's precedent. We respectfully ask that the court reverse the judgment of the district court and remand this to the ALJ and to the Social Security Commission. Thank you, Your Honors.